UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
GREEN MOUNTAIN HOLDINGS      :
(CAYMAN) LTD.,      :    **MEMORANDUM DECISION AND**
     :    **ORDER**
           Plaintiff,      :
     :    21-cv-3353 (BMC)
     - against -      :
     :
     :
289 MARYS LLC and REXHEP BOGA,      :
     :
          Defendants.      :
-------------------------------------------------------- X

**COGAN**, District Judge.

1.      This is a diversity action to foreclose on a defaulted mortgage.  On November 12, 2021, the Court granted a default judgment of foreclosure in favor of plaintiff Green Mountain against defendant-mortgagor 289 Marys LLC ("Marys") and its principal and guarantor of the mortgage note, Rexhep Boga.  The property went to a foreclosure sale and attracted about 15 bidders, the successful one of which was 289 St. Mary's Realty LLC ("Realty").  ("Realty" is not to be confused with "Marys" although their complete names are similar).

2.      On February 10, 2022, Marys filed an "Emergency Motion" to vacate the default judgment of foreclosure and set aside the foreclosure sale.  Virtually all its arguments derive from one fact:  Boga had died on September 30, 2020, about 9 months before plaintiff commenced this action.

3.      Based on that, Marys first argues that it was not validly served because Boga was the only member of the LLC, and therefore he or his estate representative were the only people who could have been served on behalf of Marys.  That is wrong.  Federal Rule of Civil Procedure 4(c)(1) allows service pursuant to state law.  In New York, a plaintiff can serve an

LLC by personal service on any of four different people: any member of the LLC; any manager of the LLC; any agent authorized by appointment to receive legal process; or any other person that the LLC has authorized to receive process.  See N.Y. C.P.L.R. 311-a.

4.      The affidavit of service on the docket reflects personal service occurred on July 8, 2021, at Marys' business location registered with the New York Department of State as the location at which process could be served.  The affidavit avers that the person served would not give his last name but disclosed his first name as "Mike".  The process server therefore referred to the recipient as "Mike Smith" and, according to the affidavit of service, this person represented that he was authorized to accept service for Marys.  Thus, the question is: Who is Mike Smith?

5.      Marys has appeared on this motion through its self-described "current owner," Mehmet J. Bogic.  Bogic is the son of the late Boga.  Plaintiff has put forth overwhelming evidence that Bogic is Mike Smith.  This evidence consists of: (1) an affidavit from the managing member of Realty, Qais Shawabkeh, averring that after the foreclosure sale, he had a conversation with Bogic where Bogic told him that he goes by the name of "Mike;" (2) a text message exchange between Shawabkeh and Bogic that Bogic signed as "Mike;" (3) in 2011, Bogic applied for a permit to do construction work on the premises using the name "Michael" Bogic; (4) the description of Mike Smith in the process server's affidavit generally matches Shawabkeh's description of Bogic; and (5) records of the New York Department of State reflect that Mary's designated Bogic, at its address, as the person who could be served with process.

6.      Equally probative of the identity of Mike Smith are the statements in an affidavit that Bogic has submitted in support of Mary's motion to vacate, as well as the affirmation his attorney submitted in reply. Both documents are evasive on the issue of Mike's identity. In the

reply affirmation, Bogic's attorney notes that "the issue of Mehmet's nickname is not a matter in controversy.  It does not mater if Mehmet is 'Mike' or 'Carl' or any other name."  However, as shown below, this is incorrect. It not only matters; it is determinative.

7.      For Bogic's part, he does not deny that he is "Mike Smith."  He states: "I was not properly served with process in this action as it [presumably, this action] pertains to Marys LLC."  The way the Court interprets this opaque statement is that he was served with process but was not a named party in this action.  This ties in with his (incorrect) argument, discussed below, that as the current owner of Marys, he is a necessary or indispensable party and therefore the judgment of foreclosure should be vacated.  Crucially, Bogic's affidavit does not deny that he was served as an owner or member of Marys.  He is saying that he was not served as a defendant. That is correct but immaterial.

8.      There is no need to hold a hearing on this issue because the evidence is so substantial, and Bogic's conclusory affidavit does not offer any proof to the contrary.  See Old Republic Ins. Co. v. Pacific Fin. Servs. Of American, Inc., 301 F.3d 54 (2d Cir. 2002) ("[N]o hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits.") (internal quotations and citations omitted).  Based on all the evidence, the Court has no doubt that Bogic is Mike Smith, and that he was served.

9.      Once the Court finds, as it has, that Bogic is "Mike Smith," it makes no difference whether Bogic/Mike Smith is an owner, as he has held himself out to be; a manager, as he undoubtedly is since he has identified no one else managing the business and filed a permit application for Marys as far back as 2011; or a designated or appointed agent, as the records of the New York Department of State show.  Whether he wears one, two, three, or four of these hats, the process server properly served Marys by personally delivering a summons and

complaint naming Marys to Bogic under N.Y. C.P.L.R. 311-a.  The default judgment was validly entered against Marys.

10.     The Court also rejects Marys' argument that since Bogic was the sole owner (or, more precisely, the sole member) of Marys, he was a necessary or indispensable party to this case.  That is also wrong.  Again, the mortgagor was Marys, not Bogic or his late father.  Bogic had no interest in the property; his only interest was in Marys.  As an interest in Marys rather than the property, Bogic's interest was not even subject to foreclosure.  In other words, a foreclosing mortgagee has no obligation to name any or every member of a limited liability company mortgagor.  See N.Y. RPAPL § 1311 (listing parties who must be named).

11.     We now turn to the status of Boga, as guarantor, who was deceased when plaintiff commenced this action.  As to him, Realty and Green Mountain have expressly waived any claim on the guarantee.  That means the status of service on him is immaterial.  A mortgagee does not have to name a guarantor in a foreclosure action.  A mortgage guarantor is only a necessary party in the action if the foreclosing mortgagee seeks a deficiency judgment against him.  See Letchworth Realty v. LLHC Realty, LLC, No. 15-cv-6680, at *3-4, 2009 WL 5361666 (W.D.N.Y. Sept. 8, 2020); Morrison v. Slater, 128 A.D. 467, 112 N.Y.S. 855 (1st Dep't 1908) (guarantors were proper but not necessary parties to mortgage foreclosure action); MFC Real Estate LLC v. Litt, 56 Misc. 3d 1209, 63 N.Y.S.3d 191 (Sup. Co. Richmond Cnty. 2017) ("The provisions of RPAPL § 1311 do not require foreclosure plaintiffs to name guarantors as necessary defendants.").[1]  Like Bogic, neither Boga nor his estate representative had any interest

---

[1] Green Mountain asserts that the Court denied its request for a deficiency judgment against Boga.  That is incorrect.  The motion for a default judgment did not seek a deficiency judgment, but a judgment for the full amount of the mortgage debt.  The Court rejected that pursuant to N.Y. RPAPL § 1301(3), but expressly stated that Green Mountain "may obtain a deficiency judgment against the debtor and the guarantor if the foreclosure sale is insufficient to satisfy the remaining debt."

in the property.  Their interest was in Marys, and it still is.  No doubt, the value of their interest in Marys may be negatively affected by foreclosure of the property, but that did not require Green Mountain to proceed against Boga or his estate as guarantor any more than it required Green Mountain to sue Bogic.

12.     Based on the Court's findings above, it is manifest that Marys meets none of the well-established requirements to vacate the judgment under Fed. R. Civ. P. Rule 60(b).  As to willfulness, the Court has found that Bogic, the manager or appointed agent of Marys, deliberately sought to evade service of process by refusing to give his last name, and, apparently feeling himself successful, did nothing with the summons and complaint with which he, on behalf of Marys, had been served.  Nothing could be more willful.

13.     Marys' attempt to show a meritorious defense is equally insubstantial, as it is almost entirely based on its claim that Bogic and/or Boga's estate representative had to be joined or that Marys was not properly served, arguments which the Court has already rejected.  There is no denial that Marys defaulted on the mortgage debt, thus making the foreclosure proper.

14.     The only other defense that Marys asserts is procedural.  It contends that because of the foreclosure moratorium in New York that was enacted due to the pandemic, Green Mountain was required to provide a hardship disclosure form before it could proceed with this action.  Although Green Mountain has submitted evidence showing that it did, in fact, serve a hardship disclosure form on Marys by certified mail, Marys has put forward evidence which suggests that it never received it.

15.     Whether Marys was in actual receipt of the form is of no importance because this action is not subject to the requirements under either the COVID-19 Emergency Eviction & Foreclosure Prevention Act of 2020 (the "Residential Act") or the COVID-19 Emergency Protect

our Small Businesses Act of 2021 (the "Commercial Act").  The Residential Act only applies to foreclosure actions of property wherein the owner or mortgagor is a "natural person."  The property at issue was owned and mortgaged by Marys, which is not a natural person, so the Residential Act is not applicable.

16.     The Commercial Act also is inapplicable as the property is not a "commercial unit."  Although commercial units are not defined in the Act, this property was zoned residentially, and publicly available property and New York City Department of Building records reflect that Marys was in the process of constructing residences, not commercial units. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("The Court may take judicial notice of any publicly available documents").

17.     Even if the Commercial Act applied, the Court could not find that Marys was prejudiced by any alleged procedural defect.  Marys could only be prejudiced if the evidence suggests that it could have truthfully claimed financial hardship due to COVID-19.  However, Marys does not assert this, and nothing suggests that it could.  In fact, the evidence points in a different direction.  Marys has asserted that it "stands ready to pay any amounts rightfully owed."  And Bogic, in his affidavit, states that "*[a]t all times relevant*, I stood, and stand, ready to pay any and all amounts due on the subject premises."  (emphasis added).

18.     Further, Marys could not have legitimately claimed it was suffering from any of the available reasons for financial hardship on the declaration.  Marys could not have lost revenue during the COVID-19 pandemic because, as Marys notes, this property was the only asset owned by the LLC, and it was and is "under construction."  Therefore, Marys could not have been making any money.  Further, as the property was under construction, there were no tenants who could have defaulted and no moving expenses for a business to have to relocate.

Finally, Marys could not have had a "significant increase in necessary out-of-pocket expenses" related to the purchase of PPP "to prevent the transmission of COVID-19 within the business." The NYC DOB records indicate that no construction work had been occurring during this period, and, in fact, that Marys' construction permit had expired on September 30, 2020.

19.     By contrast, prejudice to Green Mountain and Realty is self-evident.  This was a contested auction in which bidders were defeated because Realty bid more.  Realty has already tendered the downpayment.  There is no way to know whether vacating the foreclosure judgment would cause Realty to lose the property to another bidder or whether Green Mountain will receive a smaller bid than it has presently accepted.  The possible, even likely, fluctuation in real estate values suggests that either Realty or Green Mountain will suffer a financial loss if Green Mountain is forced to start this action all over again.

20.     The Court has considered the remaining arguments that Marys has raised, and they are without merit.  The motion to vacate the default judgment is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       March 25, 2022